Eastern District of Kentucky
FILED

JAN 22 2026

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:25-CR-148-KKC

UNITED STATES OF AMERICA            PLAINTIFF

V.          **PLEA AGREEMENT**

CHRISTIAN SILVERS VELAZQUEZ
   a.k.a. MICAH BRAVERY
   a.k.a. CHARLES JOSEPH SILVERS            DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Information, charging a violation of 18 U.S.C. § 1343, wire fraud. Pursuant to Rule 11(c)(1)(A), the United States will not bring additional charges against the Defendant based upon evidence in its possession in the Eastern District of Kentucky at the time of the execution of this Agreement and arising out of the Defendant's conduct relating to his employment with Tempur Sealy International, Inc. ("TSI"), unless the Defendant breaches this Agreement.

2. The essential elements of 18 U.S.C. § 1343 are:

   (a) that the defendant knowingly devised or participated in a scheme to defraud;

   (b) that the scheme included a material misrepresentation or concealment of a material fact;

   (c) that the defendant had the intent to defraud; and

1

(d) that the defendant used or caused another to use a wire, radio or television communications in interstate commerce in furtherance of the scheme.

3. As to Count 1 the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) From approximately December 2021 to October 2024, the Defendant worked as a "Transportation Supervisor" for TSI. TSI is headquartered in Lexington, Kentucky. The Defendant's job responsibilities included managing a team of delivery drivers at TSI's Green Island, New York, location.

(b) TSI provided travel credit cards to its delivery drivers for work-related travel expenses, including meals and hotels. In his role as a Transportation Supervisor, the Defendant was tasked with inputting and/or approving travel expenses in TSI's electronic expense system.

(c) The Defendant applied for employment at TSI using his brother's name (abbreviated here as "B.E.S.") and identification documents. The Defendant did so because TSI would have likely declined to hire him because of his criminal record, which included a prior federal conviction for bank fraud. Indeed, when applying for his position at TSI, the Defendant represented that he had not been convicted of any felony. The Defendant worked under the name B.E.S. before changing his name to "Micah Bravery."

(d) Between approximately January 2022 and October 2024, the Defendant knowingly and willfully devised and participated in a scheme to defraud TSI by misusing travel credit cards issued to TSI employees to pay for personal expenses and to divert funds into financial accounts he controlled for his own personal use.

(e) In furtherance of the scheme, the Defendant obtained and misused access to travel credit card numbers. In some instances, he used those credit card numbers to directly pay for charges to certain merchants for his personal benefit. For example, the Defendant produced a podcast and used TSI-issued travel credit card numbers to pay merchants that assisted the Defendant with his podcast. The Defendant then caused TSI to pay the credit card bill for that expense by entering the charge into TSI's expense system as a hotel expense. The Defendant manufactured a variety of bogus hotel receipts to putatively document the charges he submitted in the expense system.

(f) In other instances, the Defendant used TSI-issued travel credit card numbers to pay for fictitious charges to fabricated merchants that the Defendant created for the purpose of obtaining the proceeds of his fraudulent scheme. For example, the Defendant created an entity that operated under the name "Holiday Express," which closely mirrored the name of a popular hotel chain. The Defendant set up a merchant account for "Holiday Express" and charged TSI travel cards using that merchant name. The Defendant caused TSI to pay the associated credit card bills by entering fictitious travel expenses into TSI's expense system, making it appear as though the charges to "Holiday Express" were for legitimate hotel expenses. The Defendant also created and submitted bogus hotel receipts to document these charges. After funds were paid from the credit card to the "Holiday Express" merchant account, the Defendant transferred those funds to one or more bank account(s) that he controlled.

(g) The Defendant used and caused a variety of interstate wire communications in furtherance of the scheme to defraud. For instance, the submissions to TSI's expense system, the payments issued from the expense system, and the resulting transfers of funds into the Defendant's financial account(s) were all conducted via electronic wire transmissions. The Defendant also used telephone calls and email communications to other TSI employees in furtherance of the scheme, including the email listed in the Information.

(h) In total, the Defendant caused TSI to pay $1,023,074.19 in fraudulent credit card reimbursements.

4. The statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of not more than $250,000 or twice the gross gain or loss, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

    (a)    United States Sentencing Guidelines (U.S.S.G.), November 1, 2025, manual will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is 7.

(c) Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), increase the offense level by 14 levels because the loss amount exceeded $550,000.

(d) Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), increase the offense level by 2 levels because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means.

(e) Pursuant to U.S.S.G. § 3B1.3, the United States will argue at sentencing in favor of an increase to the offense level by 2 levels because the defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense. The Defendant retains the right to oppose this enhancement at sentencing.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(g) Pursuant to U.S.S.G. § 5E1.1, restitution is $1,023,074.19, and the victim is Tempur Sealy International, Inc.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

8. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant consents to the imposition of a forfeiture money judgment in the amount of $1,023,074.19, which represents the amount of proceeds that the Defendant obtained as a result of the offense to which he is pleading guilty. The Defendant consents

to the entry of a Preliminary Order of Forfeiture. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to pay restitution in the amount of $1,023,074.19 to Tempur Sealy International, Inc., pursuant to 18 U.S.C. § 3663(a)(3).

13. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or

indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

15. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
FIRST ASSISTANT UNITED STATES ATTORNEY

Date: 1/9/26       By: _____
                       Andrew E. Smith
                       Assistant United States Attorney

Date: 1/22/26          _____
                       Christian Silvers Velazquez
                       Defendant

Date: 1/22/26          _____
                       Thomas Lyons
                       Attorney for Defendant

9